TONY AND SUSAN ALAMO FOUNDATION, INC. *v.* Charles D. RAGLAND, Commissioner, State of Arkansas, Department of Finance and Administration

87-119                                                          746 S.W.2d 45

Supreme Court of Arkansas
Opinion delivered March 14, 1988
[Rehearing denied April 18, 1988.*]

---

*Purtle, J., would grant rehearing.

---

*Gean, Gean, & Gean,* by: *Lawrence W. Fitting,* for appellant.

*Timothy J. Leathers, Wayne Zakrzewski, Kelly S. Jennings, Ann Kell, Joe Morphew, Philip Raia,* and *Robert Jones,* by: *John Theis,* for appellee.

DARRELL HICKMAN, Justice. This is a case involving the Arkansas sales tax. The appellant is a California based, nonprofit, charitable institution authorized to do business in Arkansas and, incidental to its charitable purpose, operates several businesses in Arkansas. Six of those businesses are the focus of this lawsuit: a restaurant, a grocery store, two service stations, a clothing store, and an auto repair shop. The legal question is whether meals, clothing, goods, and services furnished by these retail businesses to members, who are called associates, of the Alamo Foundation are sales under Arkansas law and subject to the sales tax. The chancery court held generally that the transactions were sales. However, the court held that meals prepared by the restaurant and delivered to the foundation associates at Dyer, Arkansas, were taxable at wholesale, rather than retail value. No penalty was assessed for nonpayment.

14

On appeal Alamo makes four arguments: (1) the transactions are not sales; (2) if they are, they are exempt from the sales tax; (3) the Gross Receipts Act, as applied to these transactions, violates the religion clauses of the federal and state constitutions; and (4) the statutory scheme of the act is discriminatory and therefore unconstitutional.

The state appeals from the chancellor's decision valuing some of the sales at wholesale rather than retail, and the failure to impose a penalty.

We affirm the decision that the transactions were sales; the Alamo Foundation is unable to claim any exemption, and the constitutional arguments are meritless. We reverse the chancellor's holding that some of the transactions should be taxed at wholesale value and affirm the chancellor's finding that no penalty should be assessed.

The facts are essentially undisputed. Alamo operates these businesses for profit and obtained a retail sales tax permit as required by Ark. Code Ann. § 26-52-201 (1987). From these businesses, the Alamo Foundation provides substantial goods and services to its "associates" and their families. "Associates" is a term applied by the Alamo Foundation to members who join or serve the foundation. The associates are also the "employees" of these businesses and other operations of the foundation. *See Tony and Susan Alamo Foundation* v. *Secretary of Labor*, 471 U.S. 290 (1985). Associates receive no salaries. Instead, all or substantially all of their material needs are met by these businesses and other endeavors of the foundation. That includes the essentials of life: shelter, food, and clothing. For example, the Alamo Restaurant, during the audit period of September 1, 1977, through August 31, 1980, had total sales of approximately $2,300,000. Of that sum, $1,400,000 worth of food was sold to the general public; the balance of $956,345 was consumed by Alamo associates and their families. Some of this amount was transferred to foundation headquarters at Dyer for consumption there.

Alamo's first argument is that the transfer of meals, goods, and services to its associates is not a sale but merely a service to members of a religious organization; that is, if the foundation wants to give its goods and services to its people, it should not be taxed. We look to the definition of a sale in the Arkansas Gross

Receipts Act. Ark. Code Ann. § 26-52-103(a)(3)(A) (Supp. 1987) defines a sale as "the transfer of either the title or possession . . . for a valuable consideration of tangible personal property . . . ."

The question to us then is twofold: was there a transfer of title or possession of tangible personal property; if so, was valuable consideration given for the transfer? Undoubtedly, the transactions in question were transfers under this definition. The valuable consideration is the exchange of services and goods for the work of the associates.

We should mention that our decision in *Cook* v. *Southwest Hotels*, 213 Ark. 140, 209 S.W.2d 469 (1948), is not controlling. In *Southwest Hotels*, the hotel occasionally provided meals for some of its employees, and we held that these transfers were not sales. The difference is that the Alamo businesses make substantial and regular transfers to its associates. In fact, the Alamo restaurant prepared food specifically to feed its associates. It was not a matter of extra food or waste, as it is sometimes called in the restaurant business, being consumed by employees.

Were the sales exempt under the act as Alamo contends? One claiming an exemption has the burden of establishing it beyond a reasonable doubt; legislation is strictly construed against such exemptions. *See Heath* v. *Westark Poultry Processing Corp.*, 259 Ark. 141, 531 S.W.2d 953 (1975); *Hervey* v. *Tyson's Foods, Inc.*, 252 Ark. 703, 480 S.W.2d 592 (1972). The simple fact that the Alamo Foundation is a religious and charitable organization does not exempt it from paying sales tax. The foundation argues that it should be exempt under Ark. Code Ann. § 26-52-401(1) or (2) (Supp. 1987); however, none of these exemptions can be reasonably applied to Alamo's case. The act specifically provides that sales by churches and charitable organizations are generally exempt from sales tax *except* when these organizations are engaged in business for profit. Ark. Code Ann. § 26-52-401(1) or (2). Alamo does not dispute that it operates these businesses for profit.

The religion clauses of the United States and Arkansas Constitutions are the basis of the legal doctrine of separation of church and state, as well as the guarantee of the right to freely exercise one's religious beliefs without governmental interfer-

ence. Religious organizations entering the commercial and secular world necessarily do so with the understanding that they no longer enjoy the constitutional protection afforded religious organizations. There are no shields once they cross the line that separates church and state. They are no longer considered a church or religious organization, because they are not acting like one. In an analogous situation, we held that Harding College, a private religious college, was not exempt from real and personal property taxes on some businesses it operated. *Hilger* v. *Harding College*, 231 Ark. 686, 331 S.W.2d 851 (1960). In that case we said:

> The fact that the rents and revenues of a property owned by a charitable corporation are devoted to the purpose for which the corporation was organized, will not exempt such property from taxation. It is only when the property itself is *actually* and directly used for charitable purposes that the law exempts it from taxation. . . . "It is well settled that no one can exempt his property from taxation simply by the *exclusive use of the income* for public charity; for that is a matter which appeals to his own individual spirit of benevolence. It may be given today and withheld tomorrow. But a different rule prevails where the property is *directly* and *exclusively* used for that purpose."

The application of the sales tax to these transactions does not violate the religion clauses of the United States and Arkansas Constitutions. The Alamo Foundation elected to operate retail businesses for profit and, having made that choice, it must abide by the same rules under which all secular businesses operate, including taxation. *See United States* v. *Lee*, 455 U.S. 252 (1982).

Alamo finally argues that if it is not exempt from the sales tax, the statutory scheme of the Gross Receipts Act is discriminatory and therefore unconstitutional. This argument is based on the fact that the act specifically exempts several organizations such as the Boy Scouts, Girl Scouts, and 4-H Clubs from the sales tax. *See* Ark. Code Ann. § 26-52-401(7)-(10) (Supp. 1987). The foundation argues that by exempting some charitable organizations, but not its organization, the act is discriminating in violation of the equal protection and due process clauses of the

United States and Arkansas Constitutions.

■ However, the appellant's argument overlooks the fact that the Arkansas law exempts these organizations from paying the sales tax on their purchases, not from collecting it on their sales. The appellant's position in this case concerns sales it makes — not purchases, and so Alamo's argument cannot succeed under this statute. (In its reply brief, the appellant acknowledges this discrepancy but does not deal with it.)

■ We find no basis for the chancellor's decision that the meals transferred to the Alamo Foundation at Dyer should be taxed at wholesale value rather than retail value, and neither party has been able to produce any authority on the question. In *Republic Steel Corp.* v. *McCastlain, Comm'r*, 240 Ark. 979, 403 S.W.2d 90 (1966), a case involving the use tax, we stated that transfers within a company were taxable at the value of the finished product (retail), rather than at the value of the raw materials used to make the finished product (wholesale). Since the legislature has made no provision for different treatment, neither do we. All the transfers should be taxed at retail value. We find no reason to disturb the chancellor's finding that no penalty should be assessed.

Affirmed on direct appeal. Reversed in part and affirmed in part on cross-appeal.

PURTLE, J., dissents in part.

JOHN I. PURTLE, Justice, dissenting. Associates of the Foundation receive no salaries for the services they perform. They devote their full time to the Foundation, which, whether or not we approve of its beliefs and activities, is a religious organization. Most religious organizations would label such services "missionary work."

The food sales being taxed by the state are based on the food served without charge by the foundation restaurant to the associates and other needy persons. Admittedly, more food was cooked than was expected to be sold to the public. However, no money whatsoever was received by the Foundation for this food.

The food in this case was no more of a sale than the food served daily at the Union Rescue Mission. The transfer of

possession of personal property (i.e., food) is not the only necessary condition to find a sale has occurred. If it was, then the meals served at the Rescue Mission would also be subject to the sales tax. In order to tax a "transfer," valuable consideration must be given *in return for* the transfer. See Ark. Code Ann. § 26-52-103 (1987). In the present case the associates of the Foundation devoted their time to the Foundation because of their religious beliefs, not because they would receive free meals in return for their services.

In my opinion we are discriminating against the Alamo Foundation by imposing a tax on food "sales" which is not imposed upon other religious and charitable organizations. The tax should not be imposed on these "sales" by the Foundation solely because of disagreement with the manner in which the religious organization carries out its beliefs.