RHONDA K. WOOD, Associate Justice
Larry Walther, as the Director of the Arkansas Department of Finance and Administration (DFA), appeals the circuit court's order granting FLIS Enterprises, Inc.'s (Burger King) motion for summary *266 judgment in an action seeking relief from a tax assessment pursuant to Arkansas Code Annotated section 26-18-406 (Supp. 2017). DFA argues the circuit court erroneously construed the relevant statutes and promulgated rules to find that Burger King was only required to pay taxes on the wholesale value of the food ingredients removed from stock as opposed to the retail value of the meals. We hold the circuit court's interpretation was in error. Accordingly, we reverse and dismiss.
Burger King purchases individual food ingredients used to create its menu items from third-party suppliers. The ingredients are stored separately and utilized only as needed to complete specific orders. At each location, Burger King employs managers to "oversee the operations of [its] restaurants." As an additional "perk," Burger King allows its managers to consume one meal (manager meal) per shift at no cost to the manager. The manager selects the meal from the same menu available to Burger King's customers.
DFA conducted a sales-and-use-tax audit on Burger King's sixteen central-Arkansas restaurants for a three-year period and determined it underreported taxes by failing to account for the manager meals. Burger King did not dispute owing taxes on the manager meals, only the basis for the calculation. Burger King paid the full amount assessed but filed a protest with DFA's Hearing and Appeals Office. Following a hearing, the administrative law judge sustained the full assessment. Subsequently, Burger King filed a complaint in circuit court for judicial relief seeking a refund of the taxes paid pursuant to provisions of the Arkansas Tax Procedure Act. The parties filed cross-motions for summary judgment and agreed that all the material facts were undisputed. After a hearing, the circuit court entered an order granting Burger King's motion for summary judgment and reversing the decision of the administrative law judge. DFA appealed.
For reversal, DFA argues the circuit court erroneously granted Burger King's motion for summary judgment because (1) withdrawals from stock of processed goods are subject to tax at the full retail value, and (2) the circuit court erroneously relied upon law and argument not raised by the parties. Additionally, DFA contends that the circuit court erred by not following the principle of stare decisis and that Burger King failed to meet its burden of proof.
Part I. Sovereign Immunity
After briefing was completed, DFA filed a notice under Arkansas Supreme Court Rule 5-1 that it intended to cite the recent decision of Board of Trustees v. Andrews , 2018 Ark. 12, 535 S.W.3d 616 and Koonce v. Mitchell , 341 Ark. 716, 19 S.W.3d 603 (2000). This court ordered supplemental briefing by both parties to allow them an opportunity to fully brief their positions on the impact, if any, of Andrews on this matter.[1]
The general rule is that we will not address an issue raised for the first time on appeal. See Technical Servs. of Ark., Inc. v. Pledger , 320 Ark. 333, 896 S.W.2d 433 (1995). DFA did not raise the issue of sovereign immunity at the trial court level nor is it asserting it as a defense on appeal. Our discussion would normally end there. However, due to this court's previous language that "subject-matter jurisdiction based on sovereign immunity is an issue that is always open and it is the duty *267 of an appellate court to raise the issue on its own volition," DFA claims that the court could, on its own initiative, dismiss the case on sovereign immunity citing Dep't of Fin. & Admin. v. Staton , 325 Ark. 341, 942 S.W.2d 804 (1996).[2] The parties cite five cases in which this court has referenced this duty. In each cited case, with one exception, this court used this language but did not actually raise and address sovereign immunity sua sponte. See id. ; Carson v. Weiss , 333 Ark. 561, 972 S.W.2d 933 (1998) ; Ark. Dep't of Fin. & Admin. v. Tedder , 326 Ark. 495, 932 S.W.2d 755 (1996) ; and Pitcock v. State , 91 Ark. 527, 121 S.W. 742 (1909). As such, the language expressed in those cases was dicta as it was extraneous to the pending matters. In the exception, McCain v. Crossett Lumber Co. , 206 Ark. 51, 174 S.W.2d 114 (1943), the court sua sponte raised and discussed sovereign immunity and determined at the end of the opinion that it was inapplicable. However, the order of the sovereign immunity discussion within the opinion is significant because the language contradicts the court's treatment of the issue. Subject-matter jurisdiction is a "threshold issue" that the court must consider first-not last. Hunter v. Runyan , 2011 Ark. 43, at 8, 382 S.W.3d 643, 648. Therefore, if the McCain court truly considered the issue as one of subject-matter jurisdiction, it should have considered it at the outset of the opinion. In other words, McCain said one thing but did another. McCain , 206 Ark. at 61, 174 S.W.2d at 120.
Subject-matter jurisdiction is the "court's authority to hear and decide a particular type of case." Hunter , 2011 Ark. 43, at 10, 382 S.W.3d at 649. It relates more to the nature of the matter than to the identity of the litigants. Whether the court has jurisdiction over a suit against the State of Arkansas or whether the defendant has raised a defense of sovereign immunity, are not matters of subject-matter jurisdiction. Although sovereign immunity certainly has jurisdictional qualities, this court historically has treated it like an affirmative defense that must be preserved. See Ark. Lottery Comm'n v. Alpha Mktg. , 2012 Ark. 23, at 6, 386 S.W.3d 400, 404 (concluding that the trial court's failure to rule on sovereign immunity prevented appellate review). For example, our rules permit interlocutory appeals from a denial of a motion to dismiss based on the defense of sovereign immunity. Ark. R. App. P. Civ. 2(a)(10). However, we will not consider such an interlocutory appeal without a clear ruling from the circuit court on sovereign immunity. See id. While one could contend that requiring a specific ruling gives us appellate jurisdiction over interlocutory appeals, if one also accepted the proposition that sovereign immunity deprives the circuit court of subject-matter jurisdiction, remanding cases for sovereign immunity rulings would be illogical. This is why continuing to treat sovereign immunity as an affirmative defense is consistent with our precedent.
Therefore, we hold that sovereign immunity is not a matter of subject-matter jurisdiction, as it is not a limit on the court's authority to hear a particular type of case. As the parties did not raise the issue below, it is not proper for us to address it further in this case.[3] Although *268 counsel and others may desire guidance on the impact of Andrews, it would be imprudent of this court to delve into the constitutional doctrine further without full development before the circuit court and when neither party is asserting it.
Part II. Tax Assessment
As to the merits of the case, we review a circuit court decision in a tax case de novo. Baker Refrigeration Sys., Inc. v. Weiss , 360 Ark. 388, 201 S.W.3d 900 (2005). We also review issues of statutory interpretation de novo, as it is this court's responsibility to determine what a statute means. Ryan & Co. AR, Inc. v. Weiss , 371 Ark. 43, 263 S.W.3d 489 (2007). Pursuant to Arkansas Supreme Court Rule 1-2(b)(6) (2017), we have jurisdiction over this appeal because it involves a substantial question of law concerning the construction and interpretation of statutes and the rules of an administrative agency.
The "cardinal" rule of statutory interpretation is to give effect to the intent of the legislature. Miller v. Enders , 2013 Ark. 23, 425 S.W.3d 723. To do so, we first construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in the common language. Id. We construe the statute so that no word is left void, superfluous, or insignificant; and meaning and effect are given to every word in the statute. Ozark Gas Pipeline Corp. v. Ark. Pub. Serv. Comm'n , 342 Ark. 591, 29 S.W.3d 730 (2000). When the language of the statute is plain and unambiguous, there is no need to result to the rules of statutory construction, but when the meaning is not clear, we look to "the subject matter, the object to be accomplished, the purpose to the served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject." Miller , 2013 Ark. 23, 425 S.W.3d 723.
In general, a sales tax is imposed on all sales of tangible personal property unless an exemption applies. Ark. Code Ann. § 26-52-301 (Repl. 2014). Arkansas provides an exemption for purchasers regularly engaged in the business of reselling items purchased, the "sales-for-resale" exemption. Ark. Code Ann. § 26-52-401(12) (Supp. 2017). This provides them with relief from paying taxes on such purchases and instead requires payment of taxes upon resale. The "sales-for-resale" exemption also applies to goods purchased for subsequent use in processing or preparing different products for sale. Ark. Code Ann. § 26-52-401(12)(B)(i) (Supp. 2017).
However, if the purchaser who received the exemption later withdraws the product from stock and does not resell it, Arkansas Code Annotated section 26-52-322 (Repl. 2014) specifies that tax must be collected. The parties agree that Burger King qualifies for the "sale-for-resale" exemption, that the manager meals were a withdrawal from stock, and that Burger King was required to report and remit taxes on the withdrawal.
At issue here, and DFA's first point on appeal, is whether the tax for the manager meals should be assessed on the wholesale cost paid by Burger King to purchase the individual food ingredients or the retail sales price paid by customers to purchase identical meals. Ark. Code Ann. § 26-52-322 reads, in pertinent part, as follows:
(b)(2) For purposes of calculating the gross receipts tax or the compensating use tax ... the gross receipts or *269 gross proceeds for a withdrawal from stock is the value of any goods, wares, merchandise, or tangible personal property withdrawn.
(c) The Director of the Department of Finance and Administration may promulgate rules to implement this section.
Ark. Code Ann. § 26-52-322(b)(2), (c). Both parties agree that the proper calculation for the tax Burger King should remit for the meals it gives to the managers is the "value of goods ... withdrawn." However, because there is nothing in the language of the statute to indicate whether "value" refers to the wholesale value or the retail value, we turn to the rules promulgated by DFA since the General Assembly expressly provides it with the authority to promulgate rules. Ark. Code Ann. § 26-52-322(c).
DFA promulgated the Arkansas Gross Receipts Tax Rule GR-18(D). The parties devote their arguments to whether section (1) or section (2) applies. The rule provides, in pertinent part, as follows:
1. Withdrawal of purchased goods.
If a seller has a retail permit and purchases goods from its suppliers without paying tax to those suppliers claiming the "sale for resale" exemption and the seller withdraws the merchandise from stock and gives the merchandise to customers or other third parties, or uses the merchandise itself, then the value of this merchandise is a part of the seller's gross receipts or gross proceeds and the seller must remit the tax on the purchase price of the goods paid by the seller.
2. Withdrawal of manufactured or processed goods.
(a) A business that manufactures or produces products and sells the products to third parties or at retail may at times transfer title to certain of those products to itself or give the products to another person or entity. The business should report and remit tax on the sales price of the products rather than the value of the raw materials used to manufacture or produce the products.
Ark. Admin. Code 006.005.212-GR-18(D)(1), (2) (Westlaw 2017).
Section (1), which is the more general provision, states that if "purchased goods" are bought for resale and later withdrawn from stock, the tax assessed when the goods are removed and given away is the wholesale price paid by the seller. However, section (2) specifies that if the goods withdrawn from stock and given away were "manufactured or produced" by the seller, then the tax assessed is based on what would have been the sales price of the goods. Therefore, the question becomes whether the goods withdrawn are produced.
Burger King contends that section (D)(2) cannot apply because the manager meals could not be accurately described as "processed," as used in title of the section or "produced" goods, which is the term used within the text of the section. To "produce" simply means "to create," and "processed" simply means "to put through the steps of a prescribed procedure." Black's Law Dictionary (10th ed.); American Heritage College Dictionary (3rd ed.)[4] . Either definition is consistent with Burger King's description of its process. Burger King's complaint states that it prepares *270 the food fresh each day and does not store fully-compiled menu items to be withdrawn and sold. Instead, when a customer orders a meal, Burger King gathers the necessary ingredients and uses them to fill the order. Its complaint explains, "[s]imilarly, when a manager meal is consumed by a manager, [Burger King] withdraws the necessary ingredients from its stock and uses them to create the manager meal." Thus, Burger King uses the Black's Law Dictionary definition of the word "produce" to explain how it "creates" the manager meals.
In its complaint, Burger King refers to the free benefit it provides its managers as a "meal." Burger King states that it "creates" a meal from the ingredients it has purchased and provides that "meal" to the manager free of charge. It is not providing the manager the individual ingredients, and as such, it cannot claim it is proper to assess taxes on the individual ingredients. As the manager receives the meal, a produced good, section (D)(2) applies and the tax is assessed on the retail value of the meal. In short, it is the prepared meal that is withdrawn from stock and given to the manager, not the individual ingredients.
To hold otherwise and accept Burger King's argument that the calculation should be based on the value of the individual ingredients would lead to absurd results. See Clark v. Johnson Reg'l Med. Ctr. , 2010 Ark. 115, 362 S.W.3d 311 ("This court will not engage in statutory interpretations that defy common sense and produce absurd results."). Consider the practical effect of Burger King's argument: Burger King would have to (1) determine the value of one slice of tomato, one slice of cheese, one bun, an uncooked hamburger patty, several pieces of chopped lettuce, and count out how many frozen french fries or raw onion slices each manager took from stock (and that is not even attempting to determine how to assess the amount of condiments withdrawn from stock) and (2) add them all together to reach a value. Even Burger King did not attempt this calculation when it arrived at its proposed tax assessment in its complaint; rather, it used thirty-two percent of the retail price paid by customers for meals.[5]
Burger King argues that application of section (D)(2) would lead to absurd results as it could decide to charge its managers .01 cents and then only remit tax on that amount. It contends the State of Arkansas would subsequently receive much less taxes then it would if it applied its wholesale value argument. This is true. Businesses certainly have the ability to make decisions that impact the amount of taxes the State of Arkansas collects. One only needs to consider the drastic price cuts businesses make on Black Friday. The sales tax collected is reduced when a business reduces the price of each item. This does not mean this court should attempt to regulate business or protect the state's sales tax intake through its decisions. Our role is simply to interpret the law.
The language of section (D)(1) clearly accounts for the goods given away in the condition they were purchased. If the language also encompassed products combined and processed subsequent to the initial purchase, the inclusion of subsection (2) would be superfluous. We do not interpret language to render one section dispensable. Ozark Gas Pipeline Corp. , 342 Ark. 591, 29 S.W.3d 730 (2000) ; Surplusage *271 Canon, Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts 174-79 (2012).
For additional support of its argument, DFA cites a previous Arkansas sales-tax case. Tony & Susan Alamo Found., Inc. v. Ragland , 295 Ark. 12, 746 S.W.2d 45 (1988). There, the Alamo Foundation's for-profit restaurant provided prepared meals to associates of the foundation. Although the arguments on appeal were not identical,[6] certain facts are similar enough to shed light on previous litigation involving the same subject matter. Like Burger King, the Alamo restaurant had a retail sales tax permit to sell prepared meals to customers and provided the same meals to its associates without a monetary exchange. On appeal, Alamo argued that if the foundation wants to give its goods and services away, the goods and services should not be taxed. The court disagreed. While the specific tax exemption argued by Alamo was not the "sale-for-resale" exemption, the court opined that Alamo "overlook[ed] the fact that Arkansas law exempts these organizations from paying the sales tax on their purchases, not from collecting it on their sales," and held that "all the transfers should be taxed at retail value." Id. at 17, 746 S.W.2d 45. Crucial basics are the same: both Alamo and Burger King elected to go through the process of giving away a prepared meal. These were business decisions left to their discretion. Just as the Alamo Foundation was required to pay taxes on the full retail value of the meals it provided, Burger King also should be required.
This is a case of statutory construction where the undefined term in the language of the statute led to the promulgation of the rule of an administrative agency as the statute provided. In this case, DFA's interpretation is consistent with the plain language of the agency rule. As such, it was an error for the circuit court to find that the proper assessment should be based on the wholesale value of the ingredients of the manager meals and to grant Burger King summary judgment.
As we find that DFA is correct on its first point on appeal and we reverse, we need not address the additional points on appeal.
Reversed and dismissed.
Goodson, J., and Special Justice Lee Watson join in this opinion.
Wynne, J., joins in this opinion as to Part II and concurs.
Womack, J., joins in this opinion as to Part I and concurs in part and dissents in part.
Baker and Hart, JJ., dissent.
Kemp, C.J., not participating.

The dissent contends it was poor judgment to order supplemental briefing. However, once the State filed its notice regarding sovereign immunity, allowing the parties the opportunity to brief the issue was prudent as this is their case.

We overturned a separate portion of Staton but not the case in its entirety. Andrews , 2018 Ark. 12 at 11-12, 535 S.W.3d 616.

The dissent claims that we are treating the legislative branch differently than the executive and judicial branches. The dissent confounds waiver and preservation. As a general matter, we do not raise constitutional issues for the parties-whether the party be from the legislative, executive, or judicial branch. This court simply is saying it will not raise the defense of sovereign immunity for the State. In Andrews , the State had raised the issue to the circuit court, and therefore, it was preserved for our review on appeal.

We depart from Black's Law Dictionary for "processed" because in the legal context it is related to service of a judicial complaint.
According to the International Food Information Council Foundation, an example of "processed" food is "food(s) prepared in quick-service restaurants." Understanding Our Food (2010), http://www.foodinsight.org/sites/default/files/what-is-a-processedfood.pdf

Per the stipulated facts of both parties, the aggregate wholesale price paid annually by Burger King to purchase all of its food and food ingredients is approximately thirty-two percent (32%) of the aggregate retail price paid annually by Burger King's customers to purchase meals.

As noted, the Alamo case was decided in 1988; however, Ark. Code Ann. § 26-52-322 was not codified until 2009.