Cite as 2019 Ark. App. 581

# ARKANSAS COURT OF APPEALS
DIVISION II
**No.** CV-18-1058

| | |
|---|---|
| O.C.<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES<br><br>APPELLEE | **Opinion Delivered:** December 11, 2019<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, THIRTEENTH DIVISION [NO. 60PR-18-1504]<br><br>HONORABLE W. MICHAEL REIF, JUDGE<br><br>AFFIRMED |

**RITA W. GRUBER, Chief Judge**

O.C. appeals from an order of the Pulaski County Circuit Court placing her in the long-term custody of the Arkansas Department of Human Services (DHS) under the Arkansas Adult Maltreatment Custody Act. She argues that the circuit court's decision must be reversed because an adult may not be placed in DHS custody if he or she needs acute psychiatric or chronic mental-health treatment. We reject her argument and affirm the circuit court's decision.

The events precipitating the circuit court's order began in mid-June 2018 when one of O.C.'s neighbors contacted law enforcement for a welfare check. The officers observed that the kitchen faucet was broken, the drains were clogged, and the home was extremely hot and without air conditioning. Although O.C. appeared unaware that she did not own the home when officers conducted the welfare check, O.C.'s home had been sold for nonpayment of taxes, and the new owner had cut off all utilities to the home. Law

enforcement also observed O.C. acting paranoid: making comments that people were listening to her in her home, that someone was planting poison ivy in her yard, and that someone would not turn off her water.

Law enforcement contacted DHS, and a caseworker visited O.C. on June 22. O.C. would not allow the caseworker inside her home. After attempting to execute an eviction notice on July 10, law enforcement again contacted DHS and expressed concern that O.C., who was sixty-eight years old, was impaired and in no shape to be inside the home. On July 20, DHS filed a Petition for Order of Investigation, which the circuit court granted, and DHS and law enforcement went to O.C.'s home on July 30. She was taken to Baptist Hospital for evaluation because of her confused mental status. While at Baptist, O.C. was seen having a conversation with an air conditioner and was initially given a diagnosis of dementia or an infection, but Baptist told DHS that it could not do further testing without proper authorization and would be discharging O.C. to a shelter.

On August 2, DHS took a seventy-two-hour hold on O.C. and transferred her to Unity Health Hospital in Searcy for further evaluation and possible treatment. DHS filed a petition for emergency custody pursuant to Arkansas Code Annotated sections 9-20-101 (Repl. 2015 & Supp. 2017) et seq., the Arkansas Adult Maltreatment Custody Act (the Act or AMCA), which the circuit court granted. The order authorized temporary custody and further medical and psychological evaluations. The circuit court held a probable-cause hearing on August 10 and found that probable cause continued to exist to allow O.C. to remain in DHS custody.

On August 20, the circuit court began a long-term-custody hearing. Dr. Andrew Powell, O.C.'s treating psychiatrist at Unity Health Hospital, testified that he had diagnosed O.C. with bipolar disorder with psychotic features. He said that she would probably need medication for the rest of her life, although she had refused to take any medication at the time of the hearing. He said that he would not discharge her with a prescription for therapy but that generally someone with her diagnosis would make an appointment with a psychiatrist at an outpatient clinic. The treating psychiatrist would then determine with the patient whether individual or group therapy was appropriate in addition to medication. Dr. Powell did not recommend institutional care but did recommend twenty-four-hour supervision and assistance to make sure she was safe, had good nutrition, and took her medicine. He did not think that O.C. had the mental capacity to protect herself from abuse, neglect, or exploitation and opined that she should remain in DHS custody. Dr. Powell also testified that he and the hospital staff were continuing to evaluate whether O.C. also had dementia.

O.C.'s court-appointed attorney argued at the hearing that O.C. should not be placed in DHS custody under the AMCA because it does not allow DHS to take custody of persons in need of "acute psychiatric treatment" or "chronic mental health treatment." The court declined to make a final determination and ordered O.C. to remain in DHS custody while DHS gathered all evaluations concerning her condition and available potential services.

On September 13, the court resumed the long-term-custody hearing and admitted Dr. Powell's affidavit dated September 12. In the affidavit, Dr. Powell opined that O.C. had

a primary diagnosis of schizoaffective disorder, bipolar type, which could be treated with medications. The affidavit also listed a secondary diagnosis of "Unspecified Neurocognitive Disorder (dementia), likely Alzheimer's type." Dr. Powell did not recommend institutional care but advised that O.C. should live in a private home, group home, or assisted-living facility and should remain in the custody of DHS to protect her health and safety.

The court also heard testimony from Shannon Halijan, the director of adult protective services at DHS. She testified about the history of the case and DHS's involvement with O.C. She said that DHS had secured a placement for O.C. at a residential facility in DeWitt called West Haven, which she described as a group-home setting. O.C. would be provided medication assistance, transportation, and help making sure she got to appointments. Ms. Halijan said that West Haven would not force O.C. to take her medications, and it was not a locked facility; O.C would be free to come and go as she pleased. Ms. Halijan also said that O.C. did not appreciate the danger she was in or understand that she did not have a home to return to if she did not go to West Haven.

The court entered an order on September 14, 2018, rejecting O.C.'s arguments against custody; finding by clear and convincing evidence that O.C. suffered from a mental impairment (specifically unspecified neurocognitive disorder (dementia), likely Alzheimer's type); and finding that placement at West Haven was the least restrictive environment appropriate for her care. The court also found that O.C. lacked the capacity to comprehend the nature and consequences of remaining in a situation that presented an imminent danger to her health and safety; that she had no caregiver responsible for her protection or care;

4

and that she was in need of placement because there was not a viable alternative to protective custody. The court awarded long-term custody to DHS.

The standard of review for probate orders is well established. We review probate proceedings de novo, and we will not disturb the decision of the probate court unless it is clearly erroneous, giving due regard to the opportunity and superior position of the probate court to determine the credibility of witnesses. *Nicholson v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 52, at 6, 511 S.W.3d 903, 907. We review issues of statutory interpretation de novo, as it is for this court to decide what a statute means. *Tovias v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 228, at 5, 575 S.W.3d 621, 624.

The purpose of the AMCA is to "[p]rotect a maltreated adult . . . who is in imminent danger" and to encourage "the cooperation of state agencies and private providers in the service delivery system for maltreated adults." Ark. Code Ann. § 9-20-102 (Repl. 2015). A court may order long-term custody with DHS under the AMCA if it determines that

> (1) The adult has a mental or physical impairment[1] or lacks the capacity to comprehend the nature and consequences of remaining in a situation that presents an imminent danger to his or her health or safety;

> (2) The adult is unable to provide for his or her own protection from maltreatment; and

> (3) The court finds clear and convincing evidence that the adult to be placed is in need of placement as provided in this chapter.

Ark. Code Ann. § 9-20-117(c) (Supp. 2017).

---

[1]"Impairment" means "a disability that grossly and chronically diminishes a person's physical or mental ability to live independently or provide self-care as determined through observation, diagnosis, evaluation, or assessment." Ark. Code Ann. § 9-20-103(11) (Supp. 2017).

Here, the court made the following necessary findings by clear and convincing evidence: O.C. has a mental impairment—specifically, "unspecified neurocognitive disorder (dementia), likely Alzheimer's type"—and she lacks the capacity to comprehend the nature and consequences of remaining in a situation that presents an imminent danger to her health or safety; she is unable to protect herself from maltreatment; and she is in need of placement. O.C. does not challenge the sufficiency of any of these findings. Appellant's sole argument on appeal is that the circuit court erred in awarding DHS long-term custody over her because she was a person in need of acute psychiatric treatment when the petition was filed and continues to be a person in need of chronic mental-health treatment under the provisions of Ark. Code Ann. § 9-20-108(d).

The statute provides in relevant part as follows:

(d) No person may be taken into custody or placed in the custody of the department under this section if that person is in need of:

(1) Acute psychiatric treatment;

(2) Chronic mental health treatment;

(3) Alcohol or drug abuse treatment;

(4) Protection from domestic abuse if that person is mentally competent; or

(5) Casework supervision by mental health professionals.

Ark. Code Ann. § 9-20-108(d) (Repl. 2015). We do not address O.C.'s argument with regard to acute psychiatric treatment because she is no longer a person in need of such treatment, and a decision on this issue would be moot.[2] We turn instead to her argument

---

[2]We note that O.C.'s initial diagnosis from Baptist was dementia or an infection.

that she is a person in need of "chronic mental health treatment" for purposes of § 9-20-108(d)(2) and that this fact precludes the Act's application to her.

Dr. Powell diagnosed O.C. with bipolar disorder in August 2018 when she was sixty-eight years old. There is no evidence that O.C. has any history of mental illness, that she had ever been diagnosed with any condition related to her mental health before August 2018, or that she has ever been treated for any such condition. The only "treatment" Dr. Powell recommended for O.C.'s bipolar disorder was medication, which at the time of the hearing she had refused to take. While Dr. Powell did testify that bipolar disorder typically "does not go away" and that those with the disorder "tend to need medicine for it for the rest of their lives," he did not prescribe any treatment or therapy for O.C. He explained that generally someone with her diagnosis would make an appointment with a psychiatrist at an outpatient clinic, who would determine with the patient whether individual or group therapy was appropriate. Moreover, he specifically stated that he did not recommend institutional care. He advised that she also had a neurocognitive disorder and needed twenty-four-hour supervision and assistance to make sure she was safe, had good nutrition, and took her medicine. Finally, he stated that he did not think O.C. has the mental capacity to protect herself from abuse, neglect, or exploitation and said that she should remain in DHS custody.

To be clear, the circuit court's order was directed not to any particular treatment for bipolar disorder but to O.C.'s mental impairment, which is the specific situation that the AMCA is designed to address. The circuit court noted that in addition to Dr. Powell's diagnosis of bipolar disorder, he diagnosed O.C. with unspecified neurocognitive disorder, which the court noted was "not a mental health diagnosis." The court also cited Ms.

7

Halijan's testimony that O.C. was homeless due to eviction proceedings having been initiated against her and Baptist Hospital's decision to discharge O.C. to a shelter before DHS took emergency custody of her under the AMCA. The court then made the following specific findings:

> 8. The court hereby overrules all of [O.C.'s] written and oral arguments against custody, and the Court finds that the Department has shown by clear and convincing evidence that [O.C.] suffers a mental impairment, namely: unspecified neurocognitive disorder (dementia), likely Alzheimer's type, and that placement at the residential care facility, West Haven, Inc., is the least restrictive environment appropriate for her care.
>
> 9. The Court finds that [O.C.] is an impaired adult and that she is unable to protect herself from maltreatment. She also lacks the capacity to comprehend the nature and consequences of remaining in a situation that presents an imminent danger to her health or safety.
>
> 10. [O.C.] has no caregiver, responsible for her protection, care, or custody.
>
> 11. The Court finds by clear and convincing evidence that [O.C.] is in need of placement. At this time, there are not sufficient services available to [O.C.] for non-institutional care or court-ordered protective services to provide a viable alternative to protective custody. Therefore, the Department is awarded long term custody of [O.C.]. Placement shall be at an appropriate facility, in the least restrictive environment that best meets [O.C.'s] needs.

The court ordered DHS to review the case no less frequently than every six months and to file a written report of the review with the court.

Our interpretation of the AMCA suggests that custody under the Act is not intended to replace other treatment options for persons in need of chronic mental-health treatment and for whom another solution is appropriate. Furthermore, we do not interpret Ark. Code Ann. § 9-20-108(d)(2) as precluding application of the Act in cases such as this one, in which the individual has a diagnosis of a neurocognitive disorder; lacks the capacity to comprehend the nature and consequences of remaining in a situation that presents an

8

imminent danger to her health or safety; is unable to provide for her own protection from maltreatment; and whom the court finds is in need of placement under the AMCA. O.C. has been evicted from her home and does not understand that she has no home to return to, has dementia, and lacks insight regarding her mental-impairment issues. Moreover, she does not challenge the sufficiency of the court's findings, and she has not argued to the circuit court or to us that she has a plan to address her dementia or homelessness, much less her other mental-health issues. She argues only that Dr. Powell's testimony that she needs medication for life is a bar to DHS custody.[3]

We simply do not interpret the AMCA so narrowly. We strive to reconcile statutory provisions relating to the same subject to make them sensible, consistent, and harmonious. *City of Tontitown v. First Sec. Bank*, 2017 Ark. App. 326, at 7, 525 S.W.3d 18, 23. The purpose of the AMCA is to "[p]rotect a maltreated adult . . . who is in imminent danger" and to encourage "the cooperation of state agencies and private providers in the service delivery system for maltreated adults." Ark. Code Ann. § 9-20-102. The court made the pertinent findings under the AMCA, and O.C. has not challenged them. To construe section 9-20-108(d)(2) in such a way as to preclude the Act's application to a maltreated adult who has been diagnosed with a mental impairment and found by a court to be in need of protection under the Act and who has made no challenge to those findings would eviscerate the purpose of the Act. We will not engage in statutory interpretations that defy

---

[3]We note that O.C.'s argument arises from a colloquy in which Dr. Powell testified that O.C. was likely to need medication for the rest of her life because typically bipolar disorder does not "go away." O.C.'s counsel then asked him, "Okay. So she'll need mental health care for the rest of her life?" to which Dr. Powell responded, "Yes."

common sense and produce absurd results. *Walther v. FLIS Enters., Inc.*, 2018 Ark. 64, at 10, 540 S.W.3d 264, 270.

Affirmed.

VIRDEN and HARRISON, JJ., agree.

*William R. Simpson, Jr.*, Public Defender, by: *Andrew Thornton*, Deputy Public Defender, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.