COURTNEY HUDSON GOODSON, Associate Justice
Appellant Dena Wilson appeals the Pulaski County Circuit Court's order dismissing her counterclaim for declaratory and injunctive relief against appellee Arkansas *202 Department of Human Services (DHS). For reversal, Wilson argues that the circuit court lacked jurisdiction to consider the counterclaim because DHS was entitled to sovereign immunity. We affirm.
On February 29, 2016, DHS petitioned the circuit court for an ex parte order of investigation alleging that it had received a report that Wilson had physically abused her minor child, I.W. DHS asserted that it had a duty under the Child Maltreatment Act to interview and examine Wilson and I.W.; however, DHS stated that despite several attempts to investigate the matter, Wilson and her attorney had refused to allow DHS to enter the home or have contact with I.W.
The circuit court granted the petition the same day and entered an order requiring Wilson to permit examination of I.W. and inspection of her home. The DHS family service worker, Mary Hawkins, and a Maumelle police officer presented the order to Wilson on March 12 and 14, 2016, but Wilson refused to cooperate. DHS did not enter the home, examine I.W., or seek further enforcement of the order.
On June 25, 2016, Wilson filed a "Counterclaim and Third-Party Complaint for Declaratory Judgment and Injunctive Relief" along with a brief in support. In addition to DHS, she named the State of Arkansas as a third-party defendant. Wilson alleged that several provisions in the Child Maltreatment Act permitted unreasonable searches and seizures in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. She further alleged that these statutes violated her due-process rights as well as separation-of-powers principles. She requested declaratory and injunctive relief, both for her and on behalf of other similarly situated individuals, and also that the order of investigation be vacated.
DHS moved to dismiss the counterclaim pursuant to Ark. R. Civ. P. 12(b)(6) and to vacate the order of investigation. DHS argued that the counterclaim was procedurally improper and that Wilson could have challenged the order by applying for a stay pending a hearing, as is authorized under the Child Maltreatment Act. Further, DHS asserted that it had no intention of enforcing the order of investigation and asked the circuit court to vacate it, contending that this action would render the counterclaim moot. Wilson filed a response to the motion arguing that her counterclaim was proper and that her request for declaratory relief was not moot even if the order of investigation was vacated.
On October 28, 2016, the State filed a motion to dismiss the third-party complaint against it based on sovereign immunity. The State did not assert sovereign immunity on behalf of DHS. Wilson responded and denied the State's allegations, and a hearing was held on the motion on February 8, 2017. On March 9, 2017, the circuit court entered an order granting the State's motion and dismissing the third-party complaint without prejudice.
DHS filed an amended response to Wilson's counterclaim on May 9, 2017, and renewed its request that the order of investigation be vacated and that the counterclaim be dismissed. DHS also addressed the merits of Wilson's constitutional arguments and prayed that the circuit court deny her claims for declaratory and injunctive relief.
After a hearing on June 23, 2017, at which the circuit court heard only arguments of counsel, the court entered an order on July 21, 2017, denying Wilson's constitutional claims and granting DHS's motion to dismiss her counterclaim and vacate the order of investigation. Wilson filed a timely notice of appeal from the circuit court's order.
*203 On appeal, Wilson does not challenge the circuit court's denial of her claims for declaratory and injunctive relief. Instead, she argues that the circuit court lacked subject-matter jurisdiction to hear her counterclaim because DHS was entitled to sovereign immunity under article 5, section 20 of the Arkansas Constitution. She contends that the circuit court's order addressing the merits of her claims was void, that the order should be reversed, and that her case should be dismissed without prejudice due to lack of jurisdiction.
In its response brief, DHS asserts several bases on which this court may affirm the circuit court's order. DHS argues that (1) Wilson failed to preserve any sovereign-immunity argument; (2) Wilson had already obtained the relief she sought below, dismissal of the order of investigation, and the relief she seeks on appeal, dismissal of her counterclaim, so a decision by this court would have no practical legal effect on any controversy; and (3) sovereign immunity did not apply to prohibit the circuit court from considering the counterclaim.
We agree with DHS that Wilson failed to preserve her sovereign-immunity argument and affirm on this basis. Article 5, section 20 of the Arkansas Constitution states that "[t]he State of Arkansas shall never be made defendant in any of her courts." As Wilson notes, we have held that the legislature does not have the power to waive this constitutional provision by statute. Bd. of Trs. v. Andrews , 2018 Ark. 12, 535 S.W.3d 616. However, contrary to Wilson's argument, we have also held that sovereign immunity is not a matter of subject-matter jurisdiction that may be addressed for the first time on appeal. Walther v. FLIS Enters., Inc. , 2018 Ark. 64, 540 S.W.3d 264. Rather, we have explained that it is an affirmative defense that must be raised and ruled on at the circuit-court level in order to preserve the issue. Id.
Here, neither party asserted to the circuit court that DHS was entitled to sovereign immunity. In fact, Wilson expressly argued to the contrary at the hearing on the State's motion to dismiss on the basis of sovereign immunity,[1] and DHS stated in its amended response to the counterclaim that it had "no objection on the basis of jurisdiction." The issue was not raised by either Wilson or DHS at any stage of the lawsuit, nor was it ruled on by the circuit court. Accordingly, we are unable to address the sole issue raised by Wilson on appeal, and we therefore affirm the circuit court's order of dismissal.
Affirmed.
Baker and Hart, JJ., concur.
Wynne, J., dissents.
I concur. While the majority reaches the correct disposition in this case, I disagree with the majority's reliance on Walther v. FLIS Enterprises, Inc. , 2018 Ark. 64, 540 S.W.3d 264. This court's decision in Board of Trustees of the University of Arkansas v. Andrews , 2018 Ark. 12, 535 S.W.3d 616 and its progeny, including FLIS , have left our sovereign-immunity jurisprudence in a Gordian knot. FLIS provides that the failure to assert sovereign immunity as an affirmative defense amounts to a waiver of this doctrine, but in *204 Arkansas Department of Veterans Affairs v. Mallett , 2018 Ark. 217, 549 S.W.3d 351, this court held that the failure to assert sovereign immunity simply does not matter. These cases are at odds on this question, and the majority's decision here to cite FLIS as controlling authority only renders our jurisprudence further indiscernible. Furthermore, these cases are not applicable to the issue addressed by the circuit court: the constitutionality of a statute. Even so, while I am disinclined to resolve this case based on FLIS for the reasons stated above, I do believe the majority reaches the correct disposition.
Wilson's only point on appeal is that the circuit court lacked jurisdiction to entertain her counterclaim against the Arkansas Department of Human Services (ADHS). The legal basis for Wilson's counterclaim was that various Arkansas statutes afford ADHS excessive authority in violation of the United States and Arkansas Constitutions. It is perplexing that Wilson does not appeal the circuit court's decision to dismiss her counterclaim on the merits; instead, she only argues that the doctrine of sovereign immunity prevented the circuit court from deciding the constitutionality of the statutes in question.[2]
Of course the circuit court had jurisdiction to address this question, and Andrews cannot compel any different conclusion. This would be true regardless of whether any individual, entity, or other party involved in such a proceeding asserts "sovereign immunity."[3] Were this not true, the three-branch system of government established by our state constitution simply could not function. The power of American courts to invalidate laws determined to be unconstitutional was addressed in 1803 by Chief Justice John Marshall of the United States Supreme Court in Marbury v. Madison :
It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule. If two laws conflict with each other, the courts must decide on the operation of each.
So if a law be in opposition to the constitution; if both the law and the constitution apply to a particular case, so that the court must either decide that case conformably to the law, disregarding the constitution; or conformably to the constitution, disregarding the law; the court must determine which of these conflicting rules governs the case. This is of the very essence of judicial duty.
1 Cranch 137, 177-78, 2 L.Ed. 60 (1803). This fundamental principle has long been heralded by the Arkansas Supreme Court as well:
By a course of judicial decisions reaching from the earliest history of American government to the present day, without a dissenting voice it has been adjudged that courts of justice have the right, and are in duty bound, to test every law by the constitution, as the fundamental and paramount law of the land, governing all derivative power and the exercise thereof. The judicial department with us is the proper power, under the constitution, to declare the constitutionality of a law, and every act of the legislature contrary to the true intent *205 and meaning of the constitution, will be declared by the courts null and void, and of no effect whatever.
Rison v. Farr , 24 Ark. 161, 168 (1865).
Indeed, a government in which the judiciary is powerless to address the constitutionality of statutes enacted by the legislature would be a truly deranged conception of democracy. The circuit court not only had jurisdiction to address Wilson's counterclaim but also a duty to do so. Wilson's arguments to the contrary are properly rejected. As this is the only point Wilson raises on appeal, I would affirm for the reasons set forth herein.
Baker, J., joins.
I dissent from the majority's opinion affirming on the ground that Wilson failed to preserve her argument that DHS was entitled to sovereign immunity in the instant case. The majority cites Walther v. FLIS Enterprises, Inc. , 2018 Ark. 64, 540 S.W.3d 264, for the proposition that sovereign immunity is not a matter of subject-matter jurisdiction that may be addressed for the first time on appeal; rather, it is an affirmative defense that must be raised and ruled on at the circuit court level in order to preserve the issue. However, after FLIS , this court handed down Arkansas Department of Veterans Affairs v. Mallett , 2018 Ark. 217, 549 S.W.3d 351. Mallett involved a class-action complaint in which the plaintiffs alleged that the Arkansas Department of Veterans Affairs (ADVA) failed to compensate them for working overtime in violation of the Arkansas Minimum Wage Act. Over three years into the case, ADVA filed a motion to dismiss and argued for the first time that it was entitled to sovereign immunity. The circuit court denied the motion, but this court reversed and dismissed. As noted by two dissenting opinions, Mallett thus retreated from FLIS 's treatment of sovereign immunity as an affirmative defense. ("In other words, initially, ADVA did not assert sovereign immunity as an affirmative defense; and when it did, it was over three and a half years later. In sum, as discussed above, to further compound the sovereign-immunity debacle, the majority completely ignores its recent decision in Flis ." 2018 Ark. 217, at 5-6, 549 S.W.3d at 354 (Baker, J., dissenting); "Today's decision essentially ignores the teachings of FLIS in that it abandons the holding that sovereign immunity is to be treated as an affirmative defense." 2018 Ark. 217, at 7, 549 S.W.3d at 354 (Goodson, J., dissenting).)
Because the majority opinion conflicts with this court's recent decision in Mallett and further obfuscates the doctrine of sovereign immunity for the bench and bar, I respectfully dissent. Rather than affirm under the reasoning of the majority, I would dismiss the appeal as moot because the circuit court has already vacated the order of investigation and dismissed the case in its entirety. See City of Clinton v. S. Paramedic Servs., Inc. , 2012 Ark. 88, at 7, 387 S.W.3d 137, 140 (a case becomes moot when any judgment rendered would have no practical legal effect upon a then-existing legal controversy).

As DHS contends, the doctrine of judicial estoppel prohibits litigants from taking inconsistent positions to gain an advantage, Dupwe v. Wallace , 355 Ark. 521, 140 S.W.3d 464 (2004), and "an appellant may not complain on appeal about an action of the circuit court which he induced, consented to, or acquiesced." Ponder v. Ark. Dep't of Human Servs. , 2016 Ark. 261, at 5, 494 S.W.3d 426, 429.

Those statutes were Ark. Code Ann. § 12-18-608, -609, and -614.

With regard to the circuit court's earlier decision in this case to embrace sovereign immunity as a basis for dismissing the State of Arkansas as a counterdefendant, I can only say that the court's decision was entirely erroneous, and the notion that the State of Arkansas would assert sovereign immunity as a defense in this case is nothing short of troubling.