Cite as 2019 Ark. 356

# SUPREME COURT OF ARKANSAS

No. CV-18-973

| | |
|---|---|
| ROBERT STEINBUCH<br><br>     APPELLANT/CROSS-APPELLEE<br><br>V.<br><br>UNIVERSITY OF ARKANSAS A/K/A UNIVERSITY OF ARKANSAS-LITTLE ROCK; THE TRUSTEES OF THE UNIVERSITY OF ARKANSAS; MICHAEL SCHWARTZ, IN HIS OFFICIAL AND PERSONAL CAPACITY; THERESA BEINER, IN HER OFFICIAL AND PERSONAL CAPACITY; JOANN MAXEY, IN HER OFFICIAL CAPACITY; JOHN M.A. DIPIPPA, IN HIS OFFICIAL CAPACITY; AND VELMER BURTON, IN HIS OFFICIAL CAPACITY<br>     APPELLEES/CROSS-APPELLANTS | **Opinion Delivered:** December 5, 2019<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION<br>[NO. 60CV-15-5690]<br><br>HONORABLE TIMOTHY DAVIS FOX, JUDGE<br><br><br><br><br><br><br><br><br><br>AFFIRMED ON DIRECT APPEAL; CROSS-APPEAL DISMISSED. |

**JOHN DAN KEMP, Chief Justice**

Appellant Robert Steinbuch appeals the Pulaski County Circuit Court's dismissal of

his action against appellees University of Arkansas a/k/a University of Arkansas-Little Rock

("UALR"), the Trustees of the University of Arkansas, Michael Schwartz in his official and

individual capacities, Theresa Beiner in her official and individual capacities, JoAnn Maxey

in her official capacity, John M.A. DiPippa in his official capacity, and Velmer Burton in

his official capacity. On appeal, Steinbuch argues that the circuit court erred by requiring

him to pay for counsel of the representatives of a class of students implicated in his 2015

Arkansas Freedom of Information Act ("FOIA") request, by dismissing his claims for

injunctive and monetary relief against the official-capacity defendants based on sovereign immunity, by dismissing individual-capacity claims against Schwartz and Beiner, and that the University affirmatively waived sovereign immunity on a claim under the Arkansas Whistle-Blower Act ("AWBA"). Appellees (collectively "the University") cross-appeal, asserting that the circuit court erred in denying Schwartz and Beiner's dispositive motion asserting statutory immunity, allowing the AWBA claim to go forward without cognizable allegations of "adverse action," denying the University's motion to dismiss UALR as a party that lacks legal capacity to be sued, and allowing Steinbuch to pursue a claim against JoAnn Maxey in her official capacity. We affirm on direct appeal and dismiss the cross-appeal.

## I. *Facts*

Steinbuch, a professor at the William H. Bowen School of Law ("Law School") made several FOIA requests between 2012 and 2015 in connection with research he was conducting. His October 12, 2015 request consisted of spreadsheets, which included the name, LSAT score, undergraduate GPA, law school GPA, race, sex, full-time or part-time status, residency, graduation month, graduation year, and bar-passage information for every student over a ten-year period. Claiming that a release of unredacted documents would violate the students' privacy rights, the Law School produced a redacted version of the requested spreadsheet.

On November 17, 2015, Steinbuch filed a complaint in the Pulaski County Circuit Court alleging FOIA violations against UALR and Schwartz in his official capacity as then dean of the Law School. Steinbuch filed an amended complaint on November 23, 2015, in which he again claimed that UALR and Schwartz violated FOIA and sought an order for

2

the production of an unredacted copy of the spreadsheet. He also added a claim against UALR and Beiner, in her official capacity, alleging violations of the AWBA, Ark. Code Ann. §§ 21-1-601 et seq. (Repl. 2016 & Supp. 2017), for retaliatory actions against Steinbuch as a result of his original complaint. Specifically, Steinbuch claimed that, on November 19, 2015, Beiner, then associate dean of the Law School, contacted a minority student from one of Steinbuch's classes and asked the student whether Steinbuch had discussed his race-related research with the class.

On December 10, 2015, Steinbuch filed an ex parte petition for temporary restraining order and petition for preliminary injunction in which he alleged that on November 27, 2015, Law School professors Adjoa Aiyetoro and Sarah Jenkins emailed Beiner about Steinbuch's lawsuit and grading policies. In response to the email from Aiyetoro, Beiner wrote,

> Thank you for your e-mail about some of the concerns raised by this. I've been in touch with [Schwartz], and he and I are discussing how best to proceed. One or both of us will be in touch soon. In the meantime, if you, Sarah, or Ranko have any further thoughts on this, I welcome hearing from you.

Schwartz then forwarded Aiyetoro's and Jenkins's emails to Steinbuch and others involved, writing, in pertinent part,

> Normally, if I were to receive a message like the message below, either Terri or I would forward the message to the faculty member in question (in this case you, Rob), and we would work through the issues with all involved. However, because I am a named defendant in the referenced lawsuit, by copy of this message to Dr. Toro, I am asking Dr. Toro to investigate and resolve the issues.

In Steinbuch's petition, he sought to "prevent[] Defendants or their agents or representatives from any further retaliation against Plaintiff," including, but not limited to, his requested

3

attendance by Zulma Toro, then UALR provost, at an investigatory meeting. On December 29, 2015, Steinbuch filed a second ex parte petition for temporary restraining order and petition for preliminary injunction. That same day, Steinbuch filed a second amended complaint, adding Toro and Maxey, an attorney in the University of Arkansas Office of General Counsel, as defendants in their official capacities.

On January 25, 2016, the circuit court held a hearing on Steinbuch's petitions for temporary restraining order and preliminary injunction. It did not enter an order on those petitions until April 8, 2016. In the meantime, Steinbuch filed his third amended complaint on February 18, 2016. The University moved to dismiss that complaint, arguing that the requested records were exempt from FOIA, that the allegations failed to demonstrate "adverse action" as required under the AWBA, that neither Maxey nor Beiner was Steinbuch's "public employer" under the AWBA, and that UALR was not an entity amenable to suit. On April 8, 2016, the circuit court denied the University's motion.

That same day, the circuit court denied Steinbuch's petitions for temporary restraining order and preliminary injunction and found that both petitions were moot because Toro had concluded the investigation one business day prior to the January 25 hearing. The circuit court ruled sua sponte that "the graduates of UALR Bowen School of Law, whose records are implicated by Plaintiff's FOIA request that underlies the instant litigation, are necessary parties in this matter under Rule 19(a) of the Arkansas Rules of Civil Procedure" because they may have constitutional privacy rights implicated and their potential rights "are not adequately represented by either party." Thus, Steinbuch was

4

ordered to file a class-action complaint that named one or more of the students implicated by the 2015 data request and pay the attorney's fees of class counsel.[1]

On August 19, 2016, Steinbuch filed his fourth amended complaint, naming Beiner and Schwartz in their official and individual capacities and adding a claim of tortious interference with an employment contract. He also alleged that his free-speech rights under the Arkansas Constitution and United States Constitution, as well as his right to academic freedom, had been violated. The case was removed to federal district court on August 30, 2016, and then remanded to state court on August 29, 2017, after Steinbuch dropped his federal claim. On January 2, 2018, the circuit court entered an order giving Steinbuch thirty days to file a fifth amended complaint that complied with Ark. R. Civ. P. 8(a) and sixty days to comply with its April 8, 2016 order regarding former students.

Steinbuch filed his fifth amended complaint on February 2, 2018,[2] and added as defendants John DiPippa and Velmer Burton in their official capacities as the Law School dean and UALR provost, respectively. He also added a claim under the Arkansas Civil Rights Act ("ACRA") and a claim of civil conspiracy. On February 20, 2018, the University filed a motion for partial judgment on the pleadings as to all the non-FOIA claims, arguing that the institutional and official-capacity claims were barred by sovereign immunity, that

---

[1]Steinbuch's interlocutory appeal of the circuit court's order on the requirements of joinder of the defendant class of graduates and payment of class counsel's fees was dismissed for lack of appellate jurisdiction. *Steinbuch v. Univ. of Ark.*, CV-16-596 (Feb. 8, 2018) (order granting motion to dismiss appeal for lack of jurisdiction). Steinbuch did not appeal the denial of his petitions for temporary restraining order and preliminary injunction.

[2]The circuit court struck a prior version of Steinbuch's fifth amended complaint for failure to comply with Rule 8 of the Arkansas Rules of Civil Procedure.

the equitable claims either were barred by sovereign immunity or were moot, that the individual-capacity claims were barred by statutory immunity, and that he had not alleged cognizable claims for tortious interference or conspiracy. In a sixth amended complaint, Steinbuch supplemented his previous complaint by adding Evelyn Gomez and Misty Peltz Steele as the representatives of the law-school class of graduates whose data was being sought.

On May 14, 2018, the circuit court dismissed the FOIA claim (count 1) with prejudice because the parties had negotiated a settlement on that claim. The court also found that

> there is no longer a need for a class of graduates of UALR Bowen School of Law to participate in this case. The putative class representatives, Evelyn Gomez and Misty Peltz-Steele, are hereby dismissed as separate defendants in this action. In addition, there is no need for an attorney for a putative class to participate as counsel in this case.

After a hearing on the University's motion for partial judgment on the pleadings, the circuit court entered an order granting the motion, entering judgment on the pleadings, and dismissing the remaining five claims on August 6, 2018.[3] It also denied Schwartz and Beiner's claim to statutory immunity "because discovery is required to develop the facts related to statutory immunity." The circuit court then found that "[a]ny official-capacity

---

[3]The following five claims remained: a claim of violations under the AWBA (count 2); a claim of violations under the Arkansas Constitution, as enforced through the ACRA (count 3); a claim of violations to Steinbuch's academic freedom, which the circuit court interpreted as arising under the ACRA (count 4); a claim of tortious interference with an employment contract (count 5); and a civil-conspiracy claim (count 6).

6

claims, individual-capacity claims, or claims against UA/UALR that have not been specifically addressed in this Order are dismissed with prejudice." It concluded,

> The Court GRANTS Defendants' motion, enters JUDGMENT on the pleadings in Defendants' favor, and DISMISSES this civil action with prejudice. It is SO ORDERED on this 6 day of August 2018.

Steinbuch timely appealed the dismissal of his case, and the University filed a cross-appeal.[4]

## II. *Standard of Review*

A motion for judgment on the pleadings is appropriate if the pleadings show on their face that there is no merit to the suit. *See LandsnPulaski v. Ark. Dep't of Corr.*, 372 Ark. 40, 269 S.W.3d 793 (2007). When we review the granting of judgment on the pleadings, we view the facts alleged in the complaint as true and in the light most favorable to the party seeking relief. *See Rhodes v. Kroger Co.*, 2019 Ark. 174, 575 S.W.3d 387.

Our standard of review for the granting of a motion to dismiss is whether the circuit court abused its discretion. *Id.*, 575 S.W.3d at 390. An abuse of discretion is a high threshold that requires not only error in the circuit court's decision, but also that the ruling was made improvidently, thoughtlessly, or without due consideration. *Id.*, 575 S.W.3d at 390.

## III. *Points on Direct Appeal*

### A. Attorney's Fees for the FOIA Lawsuit

Steinbuch first challenges the circuit court's April 8, 2016 finding that he was required to pay for counsel for the representatives of the class of students implicated by his

---

[4]Steinbuch's notice of appeal indicates that he appeals the circuit court's orders entered on April 8, 2016, January 2, 2018, and August 6, 2018. The University cross-appeals orders entered on April 8, 2016, and August 6, 2018.

7

2015 data request. He asserts that there was "no basis in law to impose such a burden on a FOIA plaintiff" and, left unchecked, the ruling has the potential to have an extinguishing effect on FOIA activity. Steinbuch argues that attorney's fees are never recoverable against a plaintiff under FOIA and that the court's fee ruling directly conflicts with Ark. Code Ann. § 25-19-107(d)(2) (Repl. 2014).

The circuit court's April 8, 2016 order states,

Accordingly, the Court orders that this case should include, as a defendant class, graduates of UALR Bowen School of Law whose privacy interests may be affected if UALR Bowen School of Law were to release the data that Plaintiff has requested under FOIA. Plaintiff shall file a class-action complaint that names one or more of the graduates impacted by Plaintiff's 2015 data request as a representative defendant.

. . . .

Plaintiff is ordered to pay the fees of counsel for the defendant class representative and class.

We are persuaded by the University's assertion that this argument is moot. In its May 14, 2018 order—three months before the remaining claims were dismissed—the circuit court indicated that the parties had negotiated a settlement and resolved the FOIA claim. Thus, the circuit court dismissed count 1 with prejudice and found,

2. Because the Court has dismissed the FOIA claim . . ., the Court finds that there is no longer a need for a class of graduates of UALR Bowen School of Law to participate in this case. The putative class representatives, Evelyn Gomez and Misty Peltz-Steele, are hereby dismissed as separate defendants in this action. In addition, there is no need for an attorney for a putative class to participate as counsel in this case.

3. The Court expresses no view on whether Plaintiff should recover attorneys' fees under FOIA. Resolution of that issue properly rests with the State Claims Commission under Ark. Code Ann. § 25-19-107(e), Ark. Code Ann. § 19-10-204(d), and Article V, § 20, of the Arkansas Constitution. Nothing in this order is intended to operate as a bar to Plaintiff's ability to file a claim for

attorneys' fees in the Claims Commission or Defendant's ability to contest such a claim.

Based on this finding, any judgment rendered on the issue of payment of attorney's fees would not have had a practical legal effect on an existing legal controversy. Accordingly, the issue is moot. *See Terry v. White*, 374 Ark. 387, 391, 288 S.W.3d 199, 202 (2008). We have consistently held that we will not review issues that are moot because to do so would be to render advisory opinions. *See Ark. State Plant Bd. v. McCarty*, 2019 Ark. 214, at 5, 576 S.W.3d 473, 476. Thus, we affirm on the FOIA attorney's-fees issue.

## B. Official–Capacity Claims

### 1. *Injunctive relief*

Steinbuch next argues that the circuit court erred by dismissing his claims for injunctive relief based on sovereign immunity. Although the circuit court's August 6, 2018 order states that all claims "that have not been specifically addressed in this Order are dismissed with prejudice[,]" Steinbuch acknowledges on appeal that the order fails to make specific rulings on any claim for injunctive relief.

The University argued to the circuit court that Steinbuch's claims for equitable relief were barred by the doctrines of sovereign immunity and mootness. But the August 6 written order does not reflect on which of those two bases injunctive relief was denied.

Steinbuch had the burden to obtain a ruling on his argument to preserve it for appeal. *See Tillman v. Raytheon Co.*, 2013 Ark. 474, at 18, 430 S.W.3d 698, 709. Because it is unclear from the order that injunctive relief was denied on sovereign-immunity grounds, the issue is not preserved. *See Ark. Lottery Comm'n v. Alpha Mktg.*, 2012 Ark. 23, at 5–8, 386 S.W.3d 400, 403–05 (Lottery Commission's failure to obtain a ruling on the defense of

9

sovereign immunity when it moved to dismiss complaint on multiple grounds precluded our review of sovereign-immunity issue on appeal). *Cf. Kelley v. Johnson*, 2016 Ark. 268, at 9–11, 496 S.W.3d 346, 354–55 (addressing sovereign immunity on appeal when it was the sole basis on which the Arkansas Department of Correction (ADC) moved for dismissal and summary judgment, and the circuit court explicitly rejected the ADC's asserted grounds for being immune from suit).[5]

Steinbuch further contends that the circuit court made a bench ruling at a June 2018 hearing when it stated that "sovereign immunity bars any action against the state of any kind or nature, even if no monetary relief is being sought." Assuming this statement constituted an oral ruling, an oral order announced from the bench does not become effective until reduced to writing and filed. *See Nat'l Home Ctrs., Inc. v. Coleman*, 370 Ark. 119, 120, 257 S.W.3d 862, 863 (2007). The written order controls. *Id.* Thus, we hold that Steinbuch's injunctive-relief argument is unpreserved. We therefore decline to address it.

2. *Monetary relief*

Steinbuch argues that the official-capacity claims for monetary relief were not barred by sovereign immunity. Those official-capacity claims ruled by the circuit court to be barred by sovereign immunity include the AWBA claim, a retaliation claim under the ACRA, the academic-freedom claim, and a common-law conspiracy claim.

---

[5]To the extent that Steinbuch also attempts to appeal the circuit court's April 8, 2016 denial of his motion for preliminary injunction on mootness grounds, he failed to appeal that court ruling pursuant to Rule 2(a)(6) of the Arkansas Rules of Appellate Procedure–Civil. Thus, he failed to preserve any challenge to it. *See, e.g.*, *In re Estate of Stinnett*, 2011 Ark. 278, 383 S.W.3d 357.

On the issue of sovereign immunity, the Arkansas Constitution provides that "[t]he State of Arkansas shall never be made defendant in any of her courts." Ark. Const. art. 5, § 20. Generally, a suit against the State is barred by the sovereign-immunity doctrine if a judgment for the plaintiff will operate to control the action of the State or subject the State to liability. *See Ark. State Med. Bd. v. Byers*, 2017 Ark. 213, at 3, 521 S.W.3d 459, 461. The General Assembly cannot override the Arkansas Constitution by enacting legislation that subjects state entities to damages claims in circuit court. *See Bd. of Trs. of Univ. of Ark. v. Andrews*, 2018 Ark. 12, at 10–12, 535 S.W.3d 616, 622–23. We have extended sovereign immunity to state agencies and state employees sued in their official capacities. *Banks v. Jones*, 2019 Ark. 204, at 3, 575 S.W.3d 111, 114. That is because a suit against a state official in his or her official capacity is not a suit against that person, but rather is a suit against that official's office. *Id*. at 3, 575 S.W.3d at 115. As such, it is no different than a suit against the state itself. *Id*., 575 S.W.3d at 115.

Sovereign immunity does not bar an injunction against the state or state officials acting arbitrarily, capriciously, in bad faith, or in a wantonly injurious manner. *See Ark. Game & Fish Comm'n v. Heslep*, 2019 Ark. 226, at 5–6, 577 S.W.3d 1, 5. Moreover, we have long recognized that a state agency or officer may be enjoined from proposed action that is ultra vires. *See Byers*, 2017 Ark. 213, at 4, 521 S.W.3d at 461. The exception to sovereign immunity for unconstitutional acts or for acts that are ultra vires, arbitrary, capricious, or in bad faith, however, does not apply to a claim seeking monetary damages. *See Bd. of Tr. of Univ. of Ark. v. Burcham*, 2014 Ark. 61, at 5; *see also Heslep*, 2019 Ark. 226, at 6, 577 S.W.3d at 5 (sovereign immunity would bar any claim for monetary damages).

11

Under *Andrews* and its progeny, claims for monetary damages against the state and state employees acting in their official capacities are barred by sovereign immunity. Thus, we hold that Steinbuch's official-capacity claims for monetary relief are barred, and we affirm the circuit court's dismissal of them.

## C. Individual-Capacity Claims

Steinbuch also contends that the circuit court erred by dismissing the individual-capacity claims against Beiner and Schwartz.[6]

### 1. *Individual-capacity claims under the AWBA*

On Steinbuch's individual-capacity claims under the AWBA, the circuit court ruled that "[t]o the extent that Claim II asserted individual-capacity claims, the Court rules that such claims are not permitted under the WBA."

Arkansas Code Annotated § 21-1-603(a)(1) (Repl. 2016) states that

[a] public employer shall not take adverse action against a public employee because the public employee or a person authorized to act on behalf of the public employee communicates in good faith to an appropriate authority:

(A) The existence of waste of public funds, property, or manpower, including federal funds, property, or manpower administered or controlled by a public employer; or

---

[6]To the extent that Steinbuch asserts that the circuit court erred by denying, based on sovereign immunity, his request for injunctive relief against Beiner and Schwartz in their individual capacities, he has failed to preserve that argument for our review. Again, although the August 6 order states that all claims "that have not been specifically addressed in this Order are dismissed with prejudice[,]" Steinbuch acknowledges that the order fails to make specific rulings on any claim for injunctive relief, including against individuals. Because he failed to obtain a ruling on his injunctive-relief argument, it is not preserved. *See Tillman*, 2013 Ark. 474, at 18, 430 S.W.3d at 709.

(B) A violation or suspected violation of a law, rule, or regulation adopted under the law of this state or a political subdivision of the state.

Additionally, the AWBA defines "public employer" as any of the following:

(A) An agency, department, board, commission, division, office, bureau, council, authority, or other instrumentality of the State of Arkansas, including the offices of the various Arkansas elected constitutional officers and the General Assembly and its agencies, bureaus, and divisions;

(B) A state-supported college, university, technical college, community college, or other institution of higher education or department, division, or agency of a state institution of higher education;

(C) The Supreme Court, the Court of Appeals, the Administrative Office of the Courts, the circuit courts, and prosecuting attorneys' offices;

(D) An office, department, commission, council, agency, board, bureau, committee, corporation, or other instrumentality of a county government or a municipality or a district court, a county subordinate service district, a municipally owned utility, or a regional or joint governing body of one (1) or more counties or municipalities; or

(E) A public school district, school, or an office or department of a public school district in Arkansas[.]

Ark. Code Ann. § 21-1-602(5) (Repl. 2016).

In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *See Holbrook v. Healthport, Inc.*, 2014 Ark. 146, at 5, 432 S.W.3d 593, 596–97. When a statute is clear, it is given its plain meaning, and we will not search for legislative intent. *Id.* at 6, 432 S.W.3d at 597. Based on the plain language of the statute, the AWBA does not provide for suit against individuals. Thus, we hold that the circuit court did not err in dismissing the individual-capacity claims under the AWBA.

13

## 2. *Individual-capacity claims under the ACRA*

Steinbuch next contends that the circuit court erred in finding that his individual-capacity claims under the ACRA failed to state claims for which relief could be granted. The circuit court rejected count 3, a retaliation claim under the ACRA, and count 4, the academic-freedom claim, against Beiner and Schwartz in their individual capacities because the ACRA's relevant provision, Ark. Code Ann. § 16-123-108, authorizes claims of retaliation or interference with constitutional rights arising out of the employee-employer relationship to be asserted against "an employer" but not individuals. [7]

The General Assembly in Act 191 of 2017 amended Ark. Code Ann. § 16-123-108(c), which governs remedies and procedures for retaliation or interference claims under the ACRA. It added subsection (c)(2), which states, "An employment-related claim or a claim arising out of the employee-employer relationship for a violation of subsection (a) or subsection (b) of this section may be brought only against an employer, and the remedies and procedures are limited to the remedies and procedures available under § 16-123-107(c)." 2017 Ark. Acts 191, § 3.

Again, when a statute is clear, it is given its plain meaning, and we will not search for legislative intent. *See Holbrook*, 2014 Ark. 146, at 6, 432 S.W.3d at 597. Under a plain reading of the ACRA, the circuit court correctly dismissed these claims. The statute makes clear that retaliation and interference claims under the ACRA are available against

---

[7] To the extent that Steinbuch alleges the inapplicability of the ACRA or the AWBA to his individual-capacity claims, that argument is unpreserved as it is being advanced for the first time on appeal. *See Leach v. State*, 2012 Ark. 179, at 16, 402 S.W.3d 517, 528.

employers. But claims against individuals are not permitted. We hold that the circuit court properly dismissed Steinbuch's individual-capacity claims under the ACRA.

### 3. *Tortious-interference claim*

Steinbuch next argues that the circuit court erred by dismissing his claim against Beiner and Schwartz for tortious interference with a contract because they allegedly instigated sham investigations they "knew or reasonably should have known were false, all for the purpose of injuring [Steinbuch.]" In its August 6 order, the circuit court rejected this claim, finding,

> In Claim V, Plaintiff asserted common-law claims against Schwartz (in his individual capacity) and Beiner (in her individual capacity) for tortious interference with [an] employment contract. Plaintiff did not sue UA/UALR or any defendants in their official capacities for tortious interference. The Court rules that Claim V fails to state a claim for which relief can be granted. *See Faulkner v. Arkansas Children's Hosp.*, 347 Ark. 941, 960, 69 S.W.3d 393, 405–06 (2002) (holding that the complaint for tortious interference was properly dismissed because it did not sufficiently allege that the defendants, who were supervisory employees at Arkansas Children's Hospital, acted outside the scope of their employment in connection with "disciplinary actions and power struggles within a workplace setting.").

An essential element of a tortious-interference-with-contractual-relations claim is that there must be some third party involved. *See Faulkner*, 347 Ark. at 959, 69 S.W.3d at 405. A party to a contract and its employees and agents, acting within the scope of their authority, cannot be held liable for interfering with the party's own contract. *Id.*, 69 S.W.3d at 405; s*ee also Navorro-Monzo v. Hughes*, 297 Ark. 444, 447, 763 S.W.2d 635, 636 (1989) (tortious-interference claim defeated by the fact that there was no third party involved with whom a contract could be disparaged).

15

Here, the circuit court correctly dismissed this claim because there was no third party involved, and Steinbuch did not sufficiently allege that Beiner and Schwartz acted outside the scope of their employment. Additionally, Steinbuch alleged in his fifth amended complaint that "Defendants Beiner and Schwartz are agents of Defendant UA/UALR, and their actions in this matter were done at the direction, behest, acquiescence, and/or urging of UA/UALR." We hold that Beiner and Schwartz were not capable of tortious interference; accordingly, we affirm the dismissal of the claim.

4. *Civil-conspiracy claim*

Steinbuch argues that the circuit court erred in dismissing his civil-conspiracy claim.[8] In its August 6 order, the circuit court determined that the claim was barred by sovereign immunity and that

> [c]laim VI fails to state a claim for which relief can be granted. *See Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 445, 47 S.W.3d 866, 876 (2001) ("Corporate agents may not be held liable for civil conspiracy in the absence of evidence showing that they were acting for their own personal benefit rather than for the benefit of the corporation.")

In order to prove a civil conspiracy, a plaintiff must show a combination of two or more persons to accomplish a purpose that is unlawful or oppressive or to accomplish some purpose, not in and of itself unlawful, oppressive or immoral, by unlawful, oppressive or immoral means, to the injury of another. *See Born v. Hosto & Buchan, PLLC*, 2010 Ark. 292, at 9, 372 S.W.3d 324, 331. Because a corporate entity cannot conspire with itself, a civil

---

[8]To the extent that Steinbuch brought the civil-conspiracy claim against any appellees in their official capacities, the circuit court correctly dismissed it as being barred by sovereign immunity. *See Banks*, 2019 Ark. 204, at 3, 575 S.W.3d at 114.

conspiracy is not legally possible when a corporation and its alleged coconspirators are not separate entities but rather stand in either a principal-agent or an employer-employee relationship with the corporation. *See Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 445, 47 S.W.3d 866, 876 (2001). Corporate agents may not be held liable for civil conspiracy in the absence of evidence showing that they were acting for their own personal benefit rather than for the benefit of the corporation. *Id.*, 47 S.W.3d at 876.

Again, Steinbuch alleged in his fifth amended complaint that "Beiner and Schwartz are agents of Defendant UA/UALR, and their actions in this matter were done at the direction, behest, acquiescence, and/or urging of UA/UALR." Thus, Steinbuch has failed to allege facts demonstrating that Beiner or Schwartz acted for their own personal benefit. We hold that the circuit court properly dismissed the civil-conspiracy claim.

D. Waiver of Sovereign Immunity on the AWBA Claim

In his final point, Steinbuch argues that the University affirmatively waived sovereign immunity on the AWBA claim because it sent him notice, as required by Ark. Code Ann. § 21-1-608 (Repl. 2016), of his rights, including the right to sue under the AWBA. While he acknowledges that the General Assembly cannot waive sovereign immunity, Steinbuch, citing *Wilson v. Arkansas Department of Human Services*, 2018 Ark. 358, 562 S.W.3d 201, contends that sovereign immunity can be waived by a defendant and that a defendant can be estopped from asserting it as a defense.

In *Wilson*, we reiterated our holding from *Walther v. FLIS Enterprises, Inc.*, 2018 Ark. 64, 540 S.W.3d 264, that sovereign immunity is not a matter of subject-matter jurisdiction that may be raised for the first time on appeal. 2018 Ark. 358, at 4, 562 S.W.3d at 203. We

17

explained that it is an affirmative defense that must be raised and ruled on at the circuit court level in order to preserve the issue. *Id.*, 562 S.W.3d at 203. In *Wilson*, the sovereign-immunity defense was not raised by either Wilson or DHS at any stage of the lawsuit, nor was it ruled on by the circuit court. *Id.* at 5, 562 S.W.3d at 203. In that instance, we refused to address the issue for the first time on appeal.

Here, this case is distinguishable from *Wilson* because sovereign immunity was asserted by the University throughout the litigation below. And the AWBA claim was rejected by the circuit court based on sovereign immunity. Further, we agree with the University that its dissemination of a statutorily required notice does not fall within the definition of a "waiver." A "waiver" is "the voluntary abandonment or surrender by a capable person of a right known by him to exist, with the intent that he will forever be deprived of its benefits." *Fewell v. Pickens*, 344 Ark. 368, 380, 39 S.W.3d 447, 455 (2001). Pursuant to section 21-1-608, the University was required to notify employees about the AWBA's provisions. Its action in doing so did not constitute a "voluntary abandonment." *See State Office of Child Support Enforcement v. Mitchell*, 330 Ark. 338, 348, 954 S.W.2d 907, 912 (1997). Thus, the University did not waive its sovereign immunity as to the AWBA claim. Because the University asserted below that the AWBA claim was barred by sovereign immunity, we hold that the circuit court properly rejected the claim on that basis.

## IV. *Cross-Appeal*

The University cross-appeals, asserting four points: (1) the circuit court erroneously denied Beiner and Schwartz's dispositive motion asserting statutory immunity; (2) the circuit court in its April 8, 2016 order erroneously allowed the AWBA claim to go forward without

cognizable allegations of "adverse action"; (3) the circuit court in its April 8, 2016 order erroneously denied the University's motion to dismiss UALR as a party that lacks legal capacity to be sued; and (4) the circuit court in its April 8, 2016 order erroneously allowed Steinbuch to pursue a claim against JoAnn Maxey in her official capacity even though she was serving as associate general counsel and not as Steinbuch's "employer" under the AWBA.

The entirety of the case against the University, however, was dismissed by the circuit court's August 6, 2018 order. Because we affirm on direct appeal, reversal on any of the University's cross-appeal points would have no practical effect. We will not review moot issues, as doing so would be to render an advisory opinion, which we will not do. *See Bank of Am., N.A. v. Brown*, 2011 Ark. 446, at 3. We therefore dismiss the cross-appeal.

Affirmed on direct appeal; cross-appeal dismissed.

Special Justices JAMES CROUCH, ROGER ROWE, and DOUG SCHRANTZ join.

BAKER, J., concurs in part; dissents in part.

HART, J., dissents.

HUDSON, WOOD, and WYNNE, JJ., not participating.

**KAREN R. BAKER, Justice, concurring in part and dissenting in part.** I concur with the majority on Parts (III)(A), III(B)(2), III(C)(1), III(C)(2), III(C)(3), III(C)(4) and IV of the majority opinion. In *Board of Trustees of University of Arkansas v. Andrews*, 2018 Ark. 12, at 5, 535 S.W.3d 616, 619, the majority explained, "Article 5, section 20 of the Arkansas Constitution provides that [t]he State of Arkansas shall never be made defendant in any of her courts. Sovereign immunity is jurisdictional immunity from suit, and

19

jurisdiction must be determined entirely from the pleadings. *See LandsnPulaski, LLC v. Ark. Dep't of Corr.*, 372 Ark. 40, 269 S.W.3d 793 (2007); *Clowers v. Lassiter*, 363 Ark. 241, 213 S.W.3d 6 (2005); *Ark. Tech Univ. v. Link*, 341 Ark. 495, 17 S.W.3d 809 (2000)." Accordingly, pursuant to *Andrews*, Steinbuch's pleadings are inconsequential because the State cannot be sued under any circumstances—never means never. Therefore, I concur in the portions of the opinion listed above.

Further, I concur with the majority on the disposition of Part III(D) of the opinion— "Waiver of Sovereign Immunity on the AWBA Claim"—but disagree with the majority's analysis. The majority affirms the circuit court's decision that the State did not waive sovereign immunity and bars Steinbuch's AWBA claim, stating,

> In his final point, Steinbuch argues that the University affirmatively waived sovereign immunity on the AWBA claim because it sent him notice, as required by Ark. Code Ann. § 21-1-608 (Repl. 2016), of his rights, including the right to sue under the AWBA. While he acknowledges that the General Assembly cannot waive sovereign immunity, Steinbuch, citing *Wilson v. Arkansas Department of Human Services*, 2018 Ark. 358, 562 S.W.3d 201, contends that sovereign immunity can be waived by a defendant and that a defendant can be estopped from asserting it as a defense.
>
> In *Wilson*, we reiterated our holding from *Walther v. FLIS Enters., Inc.*, 2018 Ark. 64, 540 S.W.3d 264, that sovereign immunity is not a matter of subject-matter jurisdiction that may be raised for the first time on appeal. 2018 Ark. 358, at 4, 562 S.W.3d at 203. We explained that it is an affirmative defense that must be raised and ruled on at the circuit court level in order to preserve the issue. *Id.*, 562 S.W.3d at 203.
>
> . . . .
>
> Because the University asserted below that the AWBA claim was barred by sovereign immunity, we hold that the circuit court properly rejected the claim on that basis.

This analysis is misplaced. As I explained in my dissent in *FLIS Enterprises, Inc.*, 2018

Ark. 64, 540 S.W.3d 264, sovereign immunity is not an affirmative defense:

> I disagree with the majority's decision to treat sovereign immunity like an affirmative defense. Specifically, the majority states that "[a]lthough sovereign immunity certainly has jurisdictional qualities, this court historically has treated it like an affirmative defense that must be preserved. *See Ark. Lottery Comm'n v. Alpha Mktg.*, 2012 Ark. 23, at 6, 386 S.W.3d 400, 404 (concluding that the trial court's failure to rule on sovereign immunity prevented appellate review)." Following the majority's decision in *Andrews*, saying that sovereign immunity is like an affirmative defense is akin to saying a Bengal tiger is like a house cat. Further, I disagree because this position yields the nonsensical result that in each lawsuit against the State, trial counsel for a State entity may waive sovereign immunity—either as a result of poor lawyering skills, negligent omission, or even as a matter of trial strategy. This is fundamentally unfair to the citizens of Arkansas and completely absurd.

*FLIS*, 2018 Ark. 64, at 23–24, 540 S.W.3d 264, 276–77 (Baker, J., dissenting).

Further, I explained the confused state of our law regarding sovereign immunity in

my dissent in *Banks v. Jones*, 2019 Ark. 204, at 9–11, 575 S.W.3d 111, 117–18:

> [W]hile I concurred in *Williams v. McCoy*, 2018 Ark. 17, 535 S.W.3d 266, which was handed down on the same day as *Andrews*, even a fortune-teller could not have predicted the state of disarray that would lie in the wake of *Andrews*. *See Walther v. FLIS Enters., Inc.*, 2018 Ark. 64, 540 S.W.3d 264 (sovereign immunity is an affirmative defense and a failure to assert it amounts to a waiver); *Ark. Dep't of Veterans Affairs v. Mallett*, 2018 Ark. 217, 549 S.W.3d 351 (the failure to assert sovereign immunity is of no moment); *Wilson v. Ark. Dep't of Human Servs.*, 2018 Ark. 358, at 5–6, 562 S.W.3d 201, 203–04 (Hart, J., concurring) ("*FLIS* provides that the failure to assert sovereign immunity as an affirmative defense amounts to a waiver of this doctrine, but in [*Mallett*], this court held that the failure to assert sovereign immunity simply does not matter. These cases are at odds on this question, and the majority's decision here to cite *FLIS* as controlling authority only renders our jurisprudence further indiscernible."); *Id.* at 8, 562 S.W.3d at 205 (Wynne, J., dissenting) ("The majority cites [*FLIS*] for the proposition that sovereign immunity is not a matter of subject-matter jurisdiction that may be addressed for the first time on appeal; rather, it is an affirmative defense that must be raised and ruled on at the circuit court level in order to preserve the issue. However, after *FLIS*, this court handed down [*Mallett*]. . . . Over three years into the case, ADVA filed a motion to dismiss and argued for the first time

that it was entitled to sovereign immunity. The circuit court denied the motion, but this court reversed and dismissed. As noted by two dissenting opinions, *Mallett* thus retreated from *FLIS*'s treatment of sovereign immunity as an affirmative defense.").

Accordingly, sovereign immunity is not an affirmative defense. Rather, according to *Andrews*, the State can never be sued. Therefore, I would affirm the circuit court's order, and, I concur in the majority's result on this point.

Finally, I dissent from Part III(B)(1)—"Official Capacity Claims, Injunctive Relief"—because the issue is preserved. I would address the merits of this claim and affirm the circuit court's decision on this point based on *Andrews*. The majority states:

> Steinbuch had the burden to obtain a ruling on his argument to preserve it for appeal. *See Tillman v. Raytheon Co.*, 2013 Ark. 474, at 18, 430 S.W.3d 698, 709. Because it is unclear from the order that injunctive relief was denied on sovereign-immunity grounds, the issue is not preserved. *See Ark. Lottery Comm'n v. Alpha Mktg.*, 2012 Ark. 23, at 5–8, 386 S.W.3d 400, 403–05 (Lottery Commission's failure to obtain a ruling on the defense of sovereign immunity when it moved to dismiss complaint on multiple grounds precluded our review of sovereign-immunity issue on appeal).
>
> . . . .
>
> Steinbuch further contends that the circuit court made a bench ruling at a June 2018 hearing when it stated that "sovereign immunity bars any action against the state of any kind or nature, even if no monetary relief is being sought." Assuming this statement constituted an oral ruling, an oral order announced from the bench does not become effective until reduced to writing and filed. *See Nat'l Home Ctrs., Inc. v. Coleman*, 370 Ark. 119, 120, 257 S.W.3d 862, 863 (2007). The written order controls. *Id*. Thus, we hold that Steinbuch's injunctive-relief argument is unpreserved. We therefore decline to address it.

The majority's holding is flawed because Steinbuch preserved the issue. As the majority acknowledges, the circuit court's August 6, 2018 written order does not contain a specific ruling on Steinbuch's alleged request for injunctive relief. However, the record demonstrates that Steinbuch clearly sought injunctive relief. The order at issue dismissed all

claims against the University that were not specifically addressed in the order: "Any official-capacity claims, or claims against UA/UALR that have not been specifically addressed in this Order are dismissed with prejudice." Accordingly, the circuit court dismissed all claims, including Steinbuch's injunctive-relief claim, and was not required to enter specific findings of fact and conclusions of law. Here, the circuit court stated that it had considered all arguments, pleadings, briefs, and exhibits, and it ruled. To now conclude that the circuit court did not rule, when it expressly states that it did rule, is error. *TEMCO Constr., LLC v. Gann*, 2013 Ark. 202, at 16–17, 427 S.W.3d 651, 661 (Hannah, J., dissenting).

Further, in declining to reach the merits of the injunctive-relief claim, the majority relies on *Alpha Marketing*, 2012 Ark. 23, 386 S.W.3d 400. However, as I explained in my dissent to *Mallett*, 2018 Ark. 217, at 5–6, 549 S.W.3d at 353–54, *Andrews* overruled *Alpha Marketing*; therefore, the majority cannot rely on *Alpha Marketing*.

Rather, in light of *Andrews*, I would affirm the circuit court's decision on this point. Any suit against the State is barred, and Steinbuch's pleadings are inconsequential. "In *Brown v. Arkansas State HVACR Lic. Bd.*, 336 Ark. 34, 984 S.W.2d 402 (1999) . . . we pointed out that sovereign immunity is jurisdictional immunity from suit, and where the pleadings show the action is one against the State, the trial court acquires no jurisdiction." *Ark. Tech Univ.*, 341 Ark. at 501, 17 S.W.3d at 813. Therefore, despite Steinbuch's claims, the circuit court did not acquire jurisdiction to consider his claims for injunctive relief. In accordance with *Andrews*, we must affirm the circuit court's orders regarding any injunctive relief against the University. Finally, although the majority of this court held that the suit for injunctive relief may be pursued against the State in *Arkansas State Plant Board v. McCarty*, 2019 Ark.

23

214, at 9–10, 576 S.W.3d 473, 477–78, that holding conflicts with *Andrews*, and I would overrule *McCarty*. The State cannot be sued under any circumstances—never means never. *Id.* (Baker, J., dissenting). Accordingly, I dissent on this point.

Based on the discussion above, I concur in part and dissent in part.

**JOSEPHINE LINKER HART, Justice, dissenting.** This case must be dismissed for lack of a final, appealable order. The order appealed from only disposes of a motion for *partial* judgment on the pleadings. Cross-appellants acknowledge that not all the named defendants were dismissed. Furthermore, Schwartz's and Beiner's statutory-immunity defense for official-capacity claims is, by express language in the order, still pending. The University of Arkansas at Little Rock has not even been completely dismissed—there is no ruling on the injunctive relief, which Steinbuch contends is not barred by sovereign immunity.

Furthermore, the majority's reliance on *Arkansas Lottery Commission v. Alpha Marketing*, 2012 Ark. 23, 386 S.W.3d 400, is misplaced. In that case, this court held that without an express ruling on sovereign immunity, the order was not amenable to interlocutory appeal pursuant to Arkansas Rule of Appellate Procedure –Civil 2(a)(10). In *Alpha Marketing*, the failure to rule on sovereign immunity required this court to dismiss the appeal, not decide it on the merits or, more precisely, affirm the dismissal of the case on a procedural bar. The failure to rule on this issue puts the "partial" in the "partial motion for judgment on the pleadings."

In Arkansas, there is a policy against piecemeal litigation. *Blackman v. Glidewell*, 2011 Ark. 23. A final order is required to give this court appellate jurisdiction. *Id.* To be final,

24

the order must dispose of all pending claims. *Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 360 Ark. 521, 202 S.W.3d 525 (2005). Inasmuch as all pending claims are not disposed of, and there is no Arkansas Rule of Civil Procedure 54(b) certification, this case should be dismissed. *See, e.g.*, *Dodge v. Lee*, 350 Ark. 480, 88 S.W.3d 843 (2002).

I dissent.

*Corbitt Law Firm, PLLC*, by: *Chris P. Corbitt*, for appellant.

*David A. Curran*, Office of the General Counsel, for appellees.